**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crisandra Leu,<br><br>  Plaintiff,<br><br>vs.<br><br>Cox Long-Term Disability Plan; Cox Communications, Inc. Pension Plan; Cox Enterprises Inc.; Aetna Life Insurance Company,<br><br>  Defendants. | No. 2:08-CV-00889-PHX-JAT<br><br>**ORDER** |

On April 24, 2009, Defendants Cox Long-Term Disability Plan, Cox Communications, Inc. Pension Plan, Cox Enterprises Inc., and Aetna Life Insurance Company (collectively "Cox") filed a Motion for Protective Order. (Doc. 29.) On May 15, 2009, Plaintiff Crisandra Leu ("Leu") filed a Response to the Motion for Protective Order. (Doc. 34.) On June 3, 2009, Defendants filed a Reply in Support Re Motion for Protective Order. (Doc. 39.) After reviewing the parties' filings, the Court now holds that Plaintiff will be allowed very limited discovery.

# BACKGROUND

On October 16, 1989, Plaintiff began employment with Cox. (Compl ¶ 8; Answer ¶ 8.) Cox Enterprises, Inc. sponsored, administered, self-insured, and self-funded a long-term disability plan ("LTD Plan") that is part of an Employee Retirement Income Security Act ("ERISA") Employee Welfare Benefit Plan. (Compl ¶ 3; Answer ¶ 3.) Subsequent to her employment with Cox, Plaintiff became a covered employee under the LTD Plan and a "participant" as defined by 29 U.S.C. §1002(7). (Compl ¶ 7; Answer ¶ 7.) Plaintiff now seeks disability income benefits from the LTD Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.§1132(a)(1)(B). (Compl ¶ 7; Answer ¶ 7.)

Plaintiff alleges she was injured on or about September 5, 2006. (Doc. 34 at 2.) Plaintiff underwent a surgery on or about the middle of November 2006. (Compl. ¶ 11; Answer ¶ 11.) After her surgery, Plaintiff returned to work for the Defendants on or about the middle of January 2007, but subsequently stopped working.(Compl. ¶ 12;Answer ¶ 12.) In February 2007, Plaintiff filed an application for long term disability benefits through the LTD Plan and Aetna. (Compl. ¶ 13; Answer ¶ 13.) Pursuant to the terms of the Plan, Plaintiff had to remain continuously disabled from performing her prior occupation with Cox for a minimum of twenty-six weeks, the plan's elimination period, in order to be eligible for long term disability benefits. (Compl. ¶ 14 Answer ¶ 18.) Plaintiff asserts that her elimination period began September 5, 2006 and should have ended on March 4, 2007. (Doc. 34 at 3.) Plaintiff further asserts that Aetna erroneously determined her elimination period began on either February 29, 2007, after her final day of work before leaving permanently, or January 18, 2007, the first day she missed work after returning. (Doc. 34 at 3;Doc. 39 at 7.) Moreover, Plaintiff asserts that Aetna's alleged misapplication of disability dates resulted in the failure of one of Aetna's peer reviewers to consider critical evidence of her disability. (Doc. 34 at 4.) Defendants deny that they erroneously calculated or applied Plaintiff's disability dates in its decision. (Doc. 39 at 7-9.)

Plaintiff submitted documents to Aetna in support of her long term disability claim. (Compl. ¶ 18; Answer ¶ 18.) On May 29, 2007, Aetna informed Plaintiff it was denying her claim for long term disability benefits. (Compl. ¶ 19; Answer ¶ 19.) On June 4, 2007, Plaintiff exercised her right to administrative appeal under 29 U.S.C. §1133 and the provisions of the LTD Plan. (Compl. ¶ 21; Answer ¶ 21.) On appeal, Plaintiff submitted documents, that were allegedly from treating physicians and other medical professionals confirming she was disabled.(Compl. ¶ 21.) On October 9, 2007 the Plan, through Aetna, notified Plaintiff she did not meet the definition of disability and that it was reaffirming its previous decision to deny her long term disability claim. (Compl. ¶ 23; Answer ¶ 23.) Plaintiff thereafter filed suit, alleging that the Plan and Aetna operated under a conflict of interest, and that the claims administration agreement between them incentivized parsimonious claims granting, resulting in Plaintiff's denial of a full and fair review of her claim pursuant to 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503-1(g)(1), (h)(2).(Compl. ¶ 30-33.)

**ANALYSIS**

*Standard of Review*

Because the discovery allowed in ERISA is directly related to the standard of review employed by the Court, the Court must determine the applicable standard of review as a threshold matter. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (en banc). A district court reviews a denial of benefits de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan unambiguously grants discretionary authority to the plan administrator, then the administrator's decision is reviewed for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008); *Burke v. Pitney Bowes Inc. Long Term Disability Plan*, 544 F.3d 1016, 1023-24 (9th Cir. 2008) (citing *Abatie*, 458 F. 3d at 963). Generally, when applying an abuse of discretion standard to an ERISA plan, the district court's review is

limited to the administrative record. *Burke*, 544 F. 3d at 1027-28 (citing *Abatie*, 458 F.3d at 970). Furthermore, "[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Glenn*, 128 S.Ct. at 2348 (emphasis in original, internal quotations omitted).

Here, "the plan administrator is specifically empowered to exercise discretion in the interpretation of the terms of the plans or programs." (Doc. 29 Ex. 3. at 2.) Because the plan unambiguously grants discretionary authority to the plan administrator, the abuse of discretion standard applies. However, before this Court limits its review to the administrative record, the Court must determine if a conflict of interest or procedural irregularity alters the permitted scope of evidence.

*Conflict of Interest*

"A conflict of interest arises in an ERISA case when the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pockets." *Glenn*, 128 S. Ct. at 2346 (2008). A 'structural conflict of interest' exists when an insurer operates as both the plan administrator and the funding source for benefits. *Abatie*, 458 F.3d at 965-67; *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999). Structural conflicts can be neutralized by delegating claims administration responsibilities to third parties; however, delegation of claims administration does not negate a structural conflict outright. *See Hamma v. Intel Corp.*, 2009 WL 799283, at *3 (E.D. Cal. 2009) (using the delegation of claims administration as a significant factor in assessing the impact of that conflict in a denial of benefits claim)*; Mazur v. Pacific Telesis Group Comprehensive Disability Benefits Plan*, 2008 WL 564796, at *2 (N.D.Cal. 2008) (same)*; Wallace v. Intel Corp.*, 2006 WL 2709839 *6 (D. Ariz. 2006) (same). The delegation of claims administration to a third-party does not ensure against a structural conflict of interest because some employers may nevertheless influence the third-party administrator's decision making. *See e.g. Nord v. Black & Decker Disability Plan*, 296 F.3d 823 (9th Cir. 2002), *rev'd on other*

- 4 -

*grounds*, 538 U.S. 822 (2003) (finding that the defendant's delegation of claim administration duties to a third-party merely consisted of processing claims and making recommendations as to whether to grant or deny benefits, leaving the final decision-making authority to the plan administrator); *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1135-37 (11th Cir. 2004) (finding the employer of a self-insured disability plan delegated claims processing to third party, but could still instruct the claims administrator how to dispose of specific claims); *Wallace v. Intel Corp.*, 2006 WL 27909839, at *6 (finding that although the defendant had contracted with a third-party to administer the plan, the defendant still had a financial influence over the third-party administrator under the contract which "rendered the third-party susceptible to the taint of the defendant's conflict").

A court must weigh any conflict of interest under which the plan administrator labors and should "consider evidence outside of the administrative record" to decide the conflict's "nature, extent, and effect on the [plan administrator's] decision making process". *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009); *Abatie*, 458 F.3d at 970. "Because an ERISA plaintiff may be permitted to supplement the administrative record with evidence of a conflict of interest . . . *some* discovery aimed at demonstrating a conflict of interest may [be] appropriate." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949-50 (9th Cir. 2007) (emphasis in original). *See also Gullidge v. Hartford Life & Accident Ins. Co.*, 501 F. Supp. 2d 1280, 1283 (C.D. Cal. 2007) (citing *Welch* for the proposition that discovery into whether a conflict of interest existed is appropriate). The discovery may 'unmask' the nature, extent, and effect of the conflict on the decision making process. *Wilcox v. Wells Fargo & Co. Long Term Disability Plan*, 287 Fed.Appx. 602, 604 (9th Cir. 2008). However, "[w]hether to permit discovery into the nature, extent, and effect of the Plan's structural conflict of interest is also a matter within the district court's discretion." Burke, 544 F.3d at 1028 n.15. Any discovery that is allowed should be narrowly tailored to illuminate the "nature, extent, and effect" of a conflict of interest on a decision making process and should not be so broad as to constitute a fishing expedition. *See Mazur v. Pacific Telesis Group Comprehensive*

*Disability Bens. Plan*, 2008 WL 564796, at *2 (N.D. Cal. 2008); *Toven v. Metro. Life. Ins. Co.*, 517 F.Supp.2d 1174, 1176 (C.D. Cal. 2007)*; Groom v. Standard Ins. Co.*, 492 F.Supp.2d 1202, 1205 (C.D. Cal. 2007); see also *Bartholomew v. Unum Life Ins. Co.*, 579 F.Supp.2d 1339, 1342 (W.D. Wash. 2008).

It is undisputed that Cox self-funds its long term disability plan. (Doc. 29 at 2; Doc. 29 Ex. 1 at 2.) Cox is also the plan administrator. (Doc. 34 Ex. E.) As a plan administrator of a self-insured fund, a structural conflict of interest exists pursuant to *Abatie*. *Abatie*, 458 F.3d at 965-67. Defendants argue that the delegation of claim administration to Aetna negates any structural conflict of interest. (Doc. 29 at 5.) Unlike the clear dual role conflict of interest that existed in *Glenn*, where the plan administrator was also the claims adminstrator, the LTD Plan delegates its claims administration to Aetna. However, "the Ninth Circuit has not addressed whether a structural conflict of interest can be eliminated by contractually delegating authority to a third-party administrator." Mazur, 2008 WL 564796, at *1. Even though a plan delegates administration to a third party, courts have found that a plan administrator may still be susceptible to conflict, and "have suggested that a conflicted plan administrator may find it advisable to bring forth affirmative evidence 'demonstrating that it used truly independent medical examiners or a neutral, independent review process; that its employees do not have incentives to deny claims; that its interpretations of the plan have been consistent among patients; or that it has minimized any potential financial gain through structure of its business.'" *Wallace*, 2008 WL 564796, at *2 (quoting *Abatie*, 458 F.3d at 969, n.7). A *per se* rule that eliminates structural conflict upon delegation of claim administration "seems contrary to the [Ninth] Circuit's broad statement that 'plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary, even in the absence of 'smoking gun' evidence of conflict.'" *Id.* (quoting *Abatie,* 458 F.3d at 969, n.7.)

Defendants affirmatively submitted a statement from the Aetna team leader that Cox played no role in Aetna's claim evaluation or decision, strongly indicating that the

relationship between the LTD Plan and Aetna does not present the dual role conflict as it did in *Glenn*. (Doc. 29 Ex. 1 ¶¶8-10.) Plaintiff alleges that a conflict nevertheless persists because of alleged financial incentives to manage claims in a parsimonious manner. (Doc. 34 at 11.) While the evidence submitted by the Defendants strongly suggests that Cox did not give any instructions or direction in handling Plaintiff's claim, the evidence does not clearly reveal whether the LTD Plan agreement with Aetna may or may not influence Aetna's claim management. Aetna's claims administrators may have evaluated Plaintiff's claim without any direct input from Cox, but it does not necessarily follow that their claim management practices are unmotivated by any incentives in their agreement with the LTD Plan. Because it would be presumptuous to infer that Aetna's claim management is neutral and independent *per se*, very limited discovery into the financial agreement between Aetna and the LTD Plan would not be wholly inappropriate. Thus, Plaintiff is only entitled to discovery that is narrowly tailored to unmask financial incentives Plaintiff alleges is in the agreement between Aetna and Cox to manage claims parsimoniously. Accordingly, only Plaintiff's requests 6 and 13 are narrow enough to warrant production, as requests 7-12 are so broad that they constitute a fishing expedition. Other documents sought that are neither plan documents nor part of the administrative record[1] are denied. Similarly, interrogatory questions that fall outside the scope of incentivized parsimonious claim management or the administrative record are not allowed. Plaintiff's request for peer review reports are granted, but are limited to those peer review reports that were in the record at the time of Aetna's decision. Plaintiff's request for an extension of time to complete discovery is granted, but will only be extended 30 days in respect of the dispositive motion deadline.

Defendants contend that discovery should not be allowed in the absence of some preliminary showing of conflict of interest beyond their allegations. (Doc. 39 at 10.) This

---

[1] The administrative record consists of those materials in the record at the time Defendants' decision was made. *Haynes v. United States*, 891 F.2d 235, 238 (9th Cir.1989).

- 7 -

approach has been adopted by the First Circuit, prohibiting claimants to pursue conflict of interest discovery, unless they can demonstrate a threshold showing of bias beyond a structural conflict of interest. *See e.g. Sansby v. Prudential Ins. Co. Of Am.*, 2009 WL 799468, at *2 (D. Mass. 2009); *McGahey v. Harvard Univ. Flexible Benefits Plan*, 2009 WL 799464, at *2-3 (D. Mass. 2009). However, the ruling in *Wilcox* is instructive and guides this Court's determination that the Ninth Circuit contradicts the First Circuit's approach pursuant to *Glenn* and *Abatie*. 287 Fed. Appx. 602, 604. In *Wilcox*, the district court would not permit discovery unless there was a substantial showing of a conflict of interest that would likely have changed the standard of review. *Id.* at 602. However, the Ninth Circuit ordered the district court to reconsider discovery requests to obtain evidence of a conflict of interest, explaining that evidence outside of the administrative record was permitted under *Abatie* and *Glenn*, and proper in order to determine the appropriate weight to accord a conflict of interest. *Id.* at 4. Thus, the ruling in *Wilcox* suggests that discovery is appropriate without requiring Plaintiff to demonstrate more than a structural conflict of interest.

*Procedural Irregularities*

"[T]he district court may consider evidence outside the administrative record if it determines that procedural irregularities prevented the full development of the administrative record." *Burke*, 544 F.3d at 1028; *Abatie*, 458 F.3d at 970. De novo review is appropriate only "[w]hen an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA" that "alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Abatie*, 458 F.3d at 971 (holding that a change in reasoning of a denial can be a procedural irregularity because the plan participant is foreclosed from presenting any response to the new reason). *See also Burke*, 544 F.3d at 1029 (finding a procedural irregularity where a "Committee considered a basis for terminating benefits on appeal that was not part of the Plan's initial decision to terminate [claimant's] benefits"); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*,

522 F.3d 863 (9th Cir. 2008) (finding a procedural irregularity where the plan communicated directly with the plaintiff's doctors without advising the plaintiff of the communication).

A 'smaller' procedural irregularity, on the other hand, will not change the standard of review from abuse of discretion to de novo. *Abatie*, 458 F.3d at 971 (citing *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005)). When an abuse of discretion standard applies, the Court may consider evidence that could have been a part of the record that the administrator reviewed to make its decision. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003). "A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Abatie*, 458 F. 3d at 972.

Here, Plaintiff asserts that the Defendants' use of a wrong date for disability constituted a procedural violation that resulted in a denial of a full or fair review of her claim. (Doc. 34 at 2.) Unlike *Abatie*, where the insurer "tack[ed] on a new reason for denying benefits" in its final decision, or *Burke*, where a Committee considered a new basis for terminating benefits on appeal, Aetna's alleged procedural violation does not rise to the level of 'flagrant defalcation' that would warrant de novo review, altering the scope of discovery. In *Abatie*, the procedural irregularity precluded the plan participant from responding to a denial of benefits, which effectively denied her a full or fair review of her claim pursuant to 29 C.F.R. § 2560.503-1(g)(1), (h)(2). *Abatie*, 458 F.3d at 974; 29 USCS § 1133. Even if the Court were to presume that Aetna erroneously applied the proper disability dates to her elimination period, Plaintiff has not demonstrated that she was precluded from responding to a denial of benefits, or that she was denied a meaningful dialogue over Aetna's decision to deny her benefits. Rather, Aetna's decision and appeal on record indicate to the contrary: the record shows that Aetna communicated the disability dates it used and entertained Plaintiff's appeal. (Doc. 39 Ex. 8.)

Smaller procedural irregularities, reviewed under an abuse of discretion, may still allow a court to consider evidence outside of the administrative record *when the*

*irregularities have prevented full development of the administrative record. Abatie*, 458 F. 3d at 973 (emphasis added). Even if the Court were to consider Aetna's application of disability dates as a small procedural irregularity, the Plaintiff has not suggested how this "prevented [the] full development of the administrative record." *Id. See e.g. Sheakalee v. Fortis Benefits Ins. Co.*, 2009 WL 772820 (E.D. Cal. 2009) (prohibiting Plaintiff from providing evidence until Plaintiff could provide an offer of proof from the administrative record showing specifically how the record was not fully developed). Here, Plaintiff has not shown how her discovery requests would unmask evidence that would be in the administrative record had there been no procedural irregularity. Whether or not Defendants' calculation of disability dates in determining Plaintiffs elimination period was an abuse of discretion goes to the merits of Plaintiff's complaint, and is not considered here.

To the extent that Plaintiff is entitled to any discovery in relation to a procedural irregularity, Plaintiff is entitled to discovery of procedural guidelines and policies that were in place at the time of its decision. "Under ERISA, an employee benefit plan's internal review procedures must be included in the plan's written documents . . . ."*Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008). Pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), it is required that claimants be given access to all "relevant" documents to participants whose benefits claims were denied with a "full and fair review". *See Glista v. UNUM Life Ins. Co. of Am.*, 378 F.3d 113, 123 (1st Cir. 2004). "Relevant" documents include "statements of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." § 2560.503-1(m)(8)(iv). Accordingly, Plaintiff's discovery requests for procedural guidelines and policies that were in place at the time of its decision are allowable, and only include document requests 20 and 21, and interrogatories 9 and10, subject to limitations. These requests ask for, *inter alia*, procedural guidelines relating to the handling or decision-making procedures for disability claims. Any inquiries that are outside the scope of procedural policy

in place at the time of the decision, or that are irrelevant to the calculation or usage of disability dates constitute a fishing expedition and are unallowable.

Accordingly,

**IT IS ORDERED** that the scope of discovery is limited to the administrative record with the exception of those documents and inquiries narrowly tailored to the claims management agreement between Aetna and Cox, the peer review reports in the record at the time of the Defendants' decision, and the procedural policies and guidelines in place at the time of the Defendants' decision.

**IT IS FURTHER ORDERED** that the discovery deadline will be extended 30 days.

DATED this 24th day of July, 2009.

James A. Teilborg
United States District Judge